# United States Court of Appeals
## For the First Circuit

No. 09-2548

PALOMA RODRÍGUEZ,

Plaintiff, Appellee,

v.

SEÑOR FROG'S DE LA ISLA, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

Harry Anduze Montaño, with whom José Morales Boscio and Harry
Anduze Montaño Law Office were on brief, for appellant.
John Fitzpatrick Vannucci, with whom the Law Office of John
Fitzpatrick Vannucci was on brief, for appellee.

April 12, 2011

**THOMPSON**, **Circuit Judge**.  This is a diversity-based personal-injury case.  A jury returned a $450,000 verdict for Paloma Rodríguez against Señor Frog's de la Isla, Inc. ("Señor Frog," for short) in Puerto Rico's federal district court.  Señor Frog now appeals, challenging nearly every aspect of the district judge's performance.  Unable to find any reversible error in the judge's actions, we affirm.

## How It All Began[1]

San Juan, Puerto Rico, early in the pre-dawn morning of December 5, 2004.  Cruising in her Mazda 323 on the Muñoz Rivera Expressway, 21-year-old Rodríguez hit a pothole – a collision that cost her two tires and killed the engine.  But the worst was yet to come.

Turning her hazards on, Rodríguez somehow got her car to the side of the road, completely out of the way of oncoming traffic.  A police officer patrolling that stretch of highway spotted her and pulled over.  He left the cruiser's flashing lights on.  A tow-truck driver also showed up, parked his truck in front of Rodríguez's car, activated the truck's flashing lights, pointed a spotlight on the work area, and put out cones to caution drivers passing by.  As the truck driver lowered the truck's platform,

---

[1] We narrate the facts in the light most favorable to the jury's verdict.  See, e.g., Bielunas v. F/V Misty Dawn, Inc., 621 F.3d 72, 74 (1st Cir. 2010).

Rodríguez got back into the Mazda either to grab some personal items or to do something to help out with the towing process.

That is when Carlos Estrada closed in, speeding in a Mitsubishi Mirage registered to Señor Frog.  His headlights were off.  He had a blood-alcohol level nearly double the legal limit in Puerto Rico.  And he smashed that Mitsubishi right into the rear of Rodríguez's Mazda.  Rodríguez was hurt, and apparently hurt badly.  "She was thrown inside the vehicle," the officer later said.  Covered in blood, she had no vital signs – "she appeared to be dead."  But she survived and sued Señor Frog in district court under diversity jurisdiction, see 28 U.S.C. § 1332, alleging negligence and negligent entrustment.  She sued other defendants too (including Estrada), but they were later dismissed for reasons that are not important here, so we skip them.

**The Twists And Turns Of Trial**

We fast-forward to the trial, where hard-charging counsel pulled out all the stops.  For starters, Rodríguez's lawyer moved in limine to prevent Señor Frog from showing or arguing that Estrada had owned the Mitsubishi or that Rodríguez had drunk a beer or two hours before the crash.  The judge granted the motion.

Also, Rodríguez's counsel told the jurors during his opening statement that the evidence would compel them to return a $450,000 verdict in his client's favor.  Señor Frog's lawyer asked for a mistrial but instead got a cautionary instruction telling

-3-

jurors that they (not the lawyers) would decide the damage amount due Rodríguez (if any).

The attorneys later sparred over whether the parties were of diverse citizenship, and the judge ruled that they were, following an evidentiary hearing convened after Rodríguez had rested her case. They also battled over the jury instructions. And the judge seemingly sided with Rodríguez when she apparently refused to instruct the jurors on contributory or comparative negligence. We hedge with "seemingly" and "apparently" because Señor Frog failed to give us a transcript of the judge's <u>final</u> charge – a misstep that affects our analysis in several respects, as we discuss later in more detail.

The fighting spilled over into closing arguments too. Rodríguez's counsel said that his client sought damages for lost wages, which he conceded were not much, given that she was a college student/waitress when injured. But she also sought compensation for pain and suffering, which he put at "six figures." Señor Frog's lawyer objected, and the judge sustained the objection. But she declined to tell the jury right then and there to disregard the value comment. "I will instruct the jury at the end," she said, though we do not know if she did because, again, the record on appeal contains no transcript of the final charge. Rodríguez's attorney then mentioned a process that the jury could use to fix damages: her pain was worth "$9.00 a day," he said, and

she should live "55 more years," so she should get over $178,000. The judge sustained an objection to this statement, adding that the "jury will be able to evaluate what compensation, if any," Rodríguez is due. Sparks flew too when Rodríguez's lawyer said that his client had found herself under "attack" at trial (objection sustained) and that Estrada had been deported to Mexico as part of a plea agreement in a criminal case arising from the crash (objection overruled).

Finding Señor Frog liable, the jury awarded Rodríguez $450,000. The verdict does not distinguish between the types of damages. But the parties (who agree on little else) concur that the bulk of this represented pain and suffering.

In any event, Señor Frog timely moved for a new trial or remittitur. The new-trial portion of its motion blasted Rodríguez's lawyer for his comments during opening or closing statements that suggested a specific damage number, accused the defense of attacking his client, and noted that authorities had shipped Estrada back to Mexico pursuant to a plea agreement. The remittitur section called the jury's award grossly excessive. Ultimately, the judge denied the motion in an unexplained order.

Having set the stage, we turn to the legal issues on appeal, noting further facts as needed.

### The Diverse-Citizenship Issue

The diversity-jurisdiction statute empowers federal courts to hear and decide suits between citizens of different states, provided the amount in controversy is more than $75,000. See 28 U.S.C. § 1332(a). Puerto Rico is a state for diversity-jurisdiction purposes. See id. § 1332(e). And Señor Frog is a citizen of Puerto Rico, see id. § 1332(c)(1), so Rodríguez's suit is untenable if she was a Puerto Rico citizen when she filed her December 1, 2005 complaint, see, e.g., Hall v. Curran, 599 F.3d 70, 72 (1st Cir. 2010) (per curiam). Señor Frog argues that she was, though it did not press this argument until after Rodríguez had rested her case. Cf. generally Valentin v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001) (calling a pre-answer motion to dismiss under Fed. R. Civ. P. 12(b)(1) the "proper vehicle for challenging a court's subject-matter jurisdiction"). But after an evidentiary hearing, the judge deemed Rodríguez a citizen of California when she sued, and this conclusion survives clear-error review. See, e.g., Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 32 (1st Cir. 2008) (noting that a district judge's determination in this area is "a mixed question of law and fact," which we review under the "clearly erroneous" rubric) (internal quotation marks omitted); Cantellops v. Alvaro-Chapel, 234 F.3d 741, 742 (1st Cir. 2000) (similar).

Citizenship for diversity purposes is domicile, and domicile is the place where one is present and intends to stay. See, e.g., Padilla-Mangual, 516 F.3d at 31 (explaining that "[a] person's domicile is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning") (quoting Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988) (internal quotation marks omitted)); García Pérez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004) (similar); see also Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979) (adding that we require "no minimum period of residency"). As the party invoking diversity jurisdiction, Rodríguez had to prove domicile by a preponderance of the evidence, see, e.g., Padilla-Mangual, 516 F.3d at 31; García Pérez, 364 F.3d at 350 – and she did just that, presenting enough evidence to show that she was a domiciliary (and thus a citizen) of California.

Rodríguez was the only witness at the hearing on the diversity issue – Señor Frog called no one. Rodríguez testified that she had moved from Puerto Rico to California in September 2005, roughly three months before she filed this suit. She was pregnant, and she and her boyfriend Adrian Peralta wanted to start their lives together in the Golden State. Since they had very little money, the couple lived in a San Francisco Bay area home owned by Peralta's grandmother. And by the time she sued Señor

Frog, she had fully relocated from Puerto Rico to California: she was physically present in California (with her clothes, books, furniture, household items, etc.), had opened up a California bank account (she had no money in any Puerto Rico banks), had gotten a California driver's license and job, and had hired a California lawyer to fight on her behalf. And though she had not registered to vote in California (actually, she was not registered to vote anywhere) and did not attend church there, she had settled on living in the Golden State permanently. Cf. Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992) (holding that factors that can help an inquiring court determine a party's intent include where the party exercises civil and political rights, pays taxes, has real and personal property, has a driver's or other license, has bank accounts, has a job or owns a business, attends church, and has club memberships – for simplicity we call these the "Bank One factors").

Post-complaint events cast no doubt on the earnestness of Rodríguez's intent either. See generally García Pérez, 364 F.3d at 351 (holding that, even though they "are not part of the primary calculus," post-suit happenings "may bear on the sincerity of a professed intention to remain"). Rodríguez told the judge that she gave birth to a baby boy in California, turned to a California pediatrician to treat him, and put him in a California daycare for a spell. She also enrolled in three California community college

courses and got a cell phone with a California area code (she may have acquired the cell phone pre-complaint, but we cannot tell for certain). True, starting in 2007, Rodríguez spent several semesters at the InterAmerican University in Puerto Rico (she could get her bachelor's degree faster if she studied there, she said), and she was still taking classes there at the time of trial. But she made clear that she returned to California whenever school was not in session (during winter, spring, and summer breaks, for example), and she provided copies of plane tickets to prove that point. She also reaffirmed that she intended to live in California for the rest of her life (she hoped to land a teaching job there once she got her degree).

Having the exclusive ability to assess Rodríguez's demeanor and tone, the district judge was best positioned to separate true from false testimony. See, e.g., Padilla-Mangual, 516 F.3d at 33-34. The judge found Rodríguez credible, and after carefully canvassing the testimony, she meticulously detailed findings of fact, which she supported with specific references to the evidence. Because we cannot say that these findings were clearly erroneous, her ruling that there was diverse citizenship must stand.

Undaunted, Señor Frog insists that the district judge botched her ruling in several respects. For openers, Señor Frog protests that Rodríguez did not have enough Bank One factors on her

side, given that she had not registered to vote in California and had no religious affiliation there. Also, Rodríguez produced no documentary evidence – no bank statements, driving records, college transcripts, etc. – to support key claims, and, given the best-evidence rule, see Fed. R. Evid. 1002, the judge had no business accepting her "self-serving" comments about her intent to stay in California indefinitely. Searching for a "gotcha!" moment, Señor Frog notes too that Rodríguez said at trial that she "lived in Mayaguez," Puerto Rico, "all my life" – testimony it says should have caused the judge to dismiss the case for lack of diversity jurisdiction straightaway, without bothering with an evidentiary hearing.

We cannot buy into these arguments. For one thing, a party need not check off every Bank One factor to satisfy her burden, see, e.g., Padilla-Mangual, 516 F.3d at 33, and, in any event, Rodríguez checked off more than enough of them – the California bank account, driver's license, job, and personal-property location sync up nicely with key Bank One factors.

For another thing, the district judge did not blindly accept Rodríguez's statement that she intended to make California her home. Rather, the judge sifted the testimony and grounded her ruling in facts that confirmed Rodríguez's intent claim. And Señor Frog's best-evidence theory changes nothing. With exceptions not relevant here, the best-evidence rule requires a party trying to

prove the "content" of a written document to introduce the document itself.  See Fed. R. Evid. 1002.  Think of a will contest where the will is not in evidence and a witness tries to discuss the document's words from memory – that is the sort of situation that the rule was designed to address.  See generally United States v. Diaz-Lopez, 625 F.3d 1198, 1201-02 (9th Cir. 2010) (quoting leading treatises on the subject).  But that is not our case.  Rodríguez never tried to give the exact terms of her California bank account, driver's license, or college transcripts.  She simply tried to prove, through her own direct testimony, certain facts that she had direct knowledge of – that she had opened a California bank account, acquired a California license, and taken several California community-college courses pre-complaint.  Consequently, this case falls outside the compass of the best-evidence rule.  See R & R Assocs., Inc. v. Visual Scene, Inc., 726 F.2d 36, 38 (1st Cir. 1984) (commenting that "[n]o evidentiary rule . . . prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation"); see also Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 51 (1st Cir. 1999); United States v. Grossman, 614 F.2d 295, 298 n.1 (1st Cir. 1980).

Last but not least, Rodríguez's trial testimony in no way short-circuited her diverse-citizenship claim.  Consider the context.  Thrilled beyond words that his daughter had survived the collision, Rodríguez's father hosted a Christmas Day party at his

-11-

Mayaguez home in 2004 – roughly three weeks after Estrada had rear-ended Rodríguez and one year before she filed this action. Rodríguez was deeply depressed, he said, and he thought a small soirée with family and friends might lift her spirits. At trial, Rodríguez's counsel asked her whether any party-goers had come from San Juan (we are not sure why this mattered). "No," she replied, "I lived in Mayaguez all my life, so most of my friends are from Mayaguez." Señor Frog makes much of this language, suggesting that it proved her California-domicile claim was a lie – so, the argument goes, the judge should have kicked her case to the curb without further ado. We think not. Again, diversity of citizenship is determined as of the time of suit. See, e.g., Bank One, 964 F.2d at 49. And, fairly read, Rodríguez's testimony went to her pre-suit living situation, which means that her statement could not and did not sabotage diversity jurisdiction.

That ends this phase of the case. Standing by what we said moments ago – that we cannot call the judge's diverse-citizenship conclusion clearly wrong – we move, finally, to the other issues before us.

## The Evidentiary Issues

Señor Frog criticizes the judge's in limine ruling barring evidence that Estrada had owned the Mitsubishi and that Rodríguez had downed a couple of beers hours before the crash. We are unpersuaded.

We need not delve too deeply into the car-ownership issue because, just before Rodríguez rested, Señor Frog stipulated that it owned the Mitsubishi Mirage at the time of the collision. And the judge read the stipulation to the jury. Fact stipulations like this speed up the trial process by eliminating "'the need for proving essentially uncontested facts,'" which helps preserve precious judicial resources. Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 5 (1st Cir. 2007) (quoting Gomez v. Rivera Rodriguez, 344 F.3d 103, 120 (1st Cir. 2003)). So, obviously, stipulations of this sort are valued by litigants and judges alike, and once freely-made they bind the parties, the trial court, and the appellate court too. See, e.g., H. Hackfeld & Co. v. United States, 197 U.S. 442, 446 (1905); United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., 608 F.3d 871, 889 (D.C. Cir. 2010); Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988); Fisher v. First Stamford Bank and Trust Co., 751 F.2d 519, 523 (2d Cir. 1984). Consistent with these principles, Señor Frog's stipulation undercuts the line of reasoning that it seeks to pursue here – in other words, having freely stipulated to a key fact, Señor Frog must now live with the consequences. See generally Miller, 608 F.3d at 889 (explaining that "one party" to a stipulation "need offer no evidence to prove it and the other is not allowed to disprove it") (internal quotation marks omitted).

Nor is Señor Frog's argument about the beer evidence particularly promising. As we see things, its proffer reduced to this: from Rodríguez's drinking a beer or two hours before the collision, a jury could infer that (a) she drove impaired, which (b) caused her to hit a pothole that blew out her tires (she would not have hit it otherwise, apparently) and required her to pull over, which (c) put her in line to be rear-ended by Estrada as she sat in a parked car along the shoulder of the road, which, ultimately, (d) put her partly at fault for her injuries. Señor Frog's proffered evidence did not show that Rodríguez had been impaired, her lawyer argued, or that she had any role in Estrada's slamming into her while she was parked by the side of the road, totally out of the travel lane. The evidence, he added, had one purpose – to convince the jury that she was a "bad person" for having a beer or two.

The judge agreed with Rodríguez's lawyer. Rodríguez was not driving when Estrada "smash[ed]" into her – she was simply sitting there in the front seat of her parked car as the tow-truck driver worked on getting her auto towed. Rodríguez's supposed beer drinking had no causal role, the judge ruled, so "[a]bsent any other evidence to establish the alleged facts," the proffered evidence was excludable as more prejudicial than probative. See Fed. R. Evid. 403.

-14-

Before taking up this issue we must iron out a wrinkle concerning our standard of review. If an in limine ruling excludes evidence unconditionally, the adversely-affected party need take no additional steps to preserve the issue for appeal, which means abuse-of-discretion review will control. See, e.g., Crowe v. Bolduc, 334 F.3d 124, 133 (1st Cir. 2003). But if the ruling is merely tentative and "clear[ly] invit[es]" the party "to offer the evidence at trial" under the ruling's terms, that party must follow up on the invitation or else plain-error review will hold sway. See id. (adding that counsel must "clarify whether the in limine ruling was final or not" if there is any doubt). The judge's ruling here – excluding the beer evidence unless circumstances at trial changed so that Señor Frog had to offer it again – was final enough, see id. at 134, which makes abuse of discretion the proper test.

Rule 403 says that district judges may exclude relevant evidence if its probative value is substantially outweighed by other considerations, including unfair prejudice. Because they are on the front lines, district judges are better positioned than we to strike this balance, so they get a special degree of deference: only in extreme circumstances will we reverse their on-the-spot judgment calls. See, e.g., United States v. Tierney, 760 F.2d 382, 388 (1st Cir. 1985). Having thoroughly considered this matter, we

-15-

see no reason to second-guess the judge's ruling here. We explain briefly.

Sitting as a diversity court, we must apply the substantive law of Puerto Rico. See, e.g., Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 6 (1st Cir. 2010) (citing, among other cases, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Tort liability under Puerto Rico law requires both "'fault,'" Marshall v. Perez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987) (quoting Jimenez v. Pelegrina, 112 P.R.R. 881, 885 (1982)), and the requisite causal connection between the wrongdoing and the damages sustained, which is just another way of saying proximate cause, see Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007). The proximate-cause concept "limits a party's liability for hazards flowing from its negligence to those hazards that could be '"anticipated by a prudent person."'" Marshall, 828 F.2d at 847 (quoting Pacheco v. Puerto Rico Water Res. Auth., 112 P.R. Offic. Trans. 369, 372 (1982) (quoting Hernandez v. The Capital, 81 P.R. 998, 1005 (1960))). Foreseeability holds the key: a person is liable if the consequences of her wrongdoing were immediate and foreseeable, not if they were more remote and unlikely. See, e.g., Irvine v. Murad Skin Research Labs., Inc., 194 F.3d 313, 321-22 (1st Cir. 1999) (applying Puerto Rico law); Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 971-72 (1st Cir. 1991) (applying Puerto Rico law).

-16-

Clearly, then, speculation or conjecture will not cut it when it comes to proximate cause. See, e.g., Malave-Felix, 946 F.2d at 972 (citing Widow of Delgado v. Boston Insur. Co., 99 P.R.R. 693, 703 (1971), and Saez v. Municipality, 84 P.R.R. 515, 523 (1962)). And this is where Señor Frog falters: the proffered evidence (which we painstakingly portrayed five paragraphs ago) depends on a chain of inferences far too strained and uncertain to have much probative worth, and certainly not enough to counterbalance its high potential for unfair prejudice. Consequently, we cannot conclude that the judge's decision was so off the mark as to be an abuse of discretion. See generally Lussier v. Runyon, 50 F.3d 1103, 1111 (1st Cir. 1995) (noting that, "[i]n general, the abuse of discretion framework is not appellant-friendly"); Dopp v. Pritzker, 38 F.3d 1239, 1253 (1st Cir. 1994) (stressing that most "appellants who consider themselves aggrieved by discretionary decisions of the district court . . . are destined to leave this court empty-handed").

**The Instruction Issue**

Señor Frog criticizes the judge for refusing to give a contributory- or comparative-negligence instruction. We review that issue de novo if properly preserved, see, e.g., Gray v. Genlyte Group, Inc., 289 F.3d 128, 133 (1st Cir. 2002), reversing only if the rejected instruction was substantively correct, essential to an important issue in the case, and not substantially

-17-

covered in the charge given, see, e.g., Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F.3d 68, 76 (1st Cir. 2002). At the pre-charge conference Señor Frog's lawyer objected with reasons when the judge said that she would not give either instruction, which means that counsel did enough to preserve the point for appellate review. See, e.g., Fed. R. Civ. P. 51(c) & (d); Booker v. Mass. Dep't of Pub. Health, 612 F.3d 34, 40-42 (1st Cir. 2010). But regardless, Señor Frog's arguments have no traction.

Puerto Rico is a comparative-negligence jurisdiction, see P.R. Laws Ann. tit. 31, § 5141 (2008) – hence, a contributory-negligence charge had no place here. On top of that, we cannot tell whether the judge carried through her intention not to offer either instruction – and that is because Señor Frog failed to give us a transcript of the instructions as read to the jury. The transcript it has provided ends with this: "AT WHICH TIME THE JURY INSTRUCTION [sic] WERE GIVEN." Parties pursuing appellate review must supply us with enough raw material so that we can do our job. See, e.g., Campos-Orrego v. Rivera, 175 F.3d 89, 93 (1st Cir. 1999); Moore v. Murphy, 47 F.3d 8, 10-12 (1st Cir. 1995). Because Señor Frog did not meet that most basic requirement, it cannot prevail on this issue. See, e.g., Campos-Orrego, 175 F.3d at 94; Moore, 47 F.3d at 10-12.

We hasten to add that even if it had given us a transcript that left no doubt about what the judge actually said in

her final charge, Señor Frog would still lose.  Señor Frog's thesis is simple:  had the judge not wrongly granted Rodríguez's in limine motion on the beer issue, the record evidence would have obliged her to deliver the requested instruction.  Having already concluded that the judge did not gaffe the in limine ruling, we easily reject this thesis – after all, a trial judge cannot give an instruction if there is no evidence in the record to support it, see, e.g., Kelliher v. Gen. Transp. Serv. Inc., 29 F.3d 750, 754 (1st Cir. 1994); Sexton v. Gulf Oil Corp., 809 F.2d 167, 169 (1st Cir 1987), and that is the case here.

### The New-Trial Issue

Señor Frog tells us that the judge also stumbled in denying its new-trial motion.[2]  District judges, of course, do not have carte blanche to ignore "the considered verdict of a properly instructed jury" simply because they might have reached a different result in a bench trial, Quinones-Pacheco v. Am. Airlines, Inc., 979 F.2d 1, 3 (1st Cir. 1992) (emphasis added) – the underscored phrase is critical for reasons that we get to shortly.  Rather, judges may grant a new trial "'only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice.'"  Crowe v. Marchand, 506 F.3d 13, 19

---

[2] As we said, the judge denied the motion without a written explanation.  But we can take on Señor Frog's issues anyway.  See Bielunas, 621 F.3d at 77-78 (explaining when the court can take that tack).

(1st Cir. 2007) (discussing Fed. R. Civ. P. 59(a) and quoting Casillas-Díaz v. Palau, 463 F.3d 77, 81 (1st Cir. 2006)).  And we review the denial of a new-trial motion under the highly-deferential abuse-of-discretion standard.  See, e.g., id.

Señor Frog attacks the judge's new-trial order on three primary fronts.  First, it argues that Rodríguez's counsel's mention of either a lump sum or formula for computing pain-and-suffering damages during opening and closing statements constituted reversible error.  We have outlawed both practices in this circuit.[3]  See Bielunas, 621 F.3d at 78-79.  But that gets Señor

_____

[3] On this issue – which is a matter of procedure and thus governed by federal law, see Davis v. Browning-Ferris Indus., Inc., 898 F.2d 836, 837 (1st Cir. 1990) – our outright ban is clearly out of step with the prevailing federal practice.  The Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits leave it to district judges to decide whether and how lawyers may discuss pain-and-suffering damages with juries.  See, e.g., Lightfoot v. Union Carbide Corp., 110 F.3d 898, 912 (2d Cir. 1997) (noting that district judges have the discretion either to "prohibit counsel from mentioning specific figures" or to allow it with certain safeguards, "including cautionary jury instructions"); Murphy v. Nat'l R.R. Passenger Corp., 547 F.2d 816, 818 (4th Cir. 1977) (stating that if the trial court, "in its discretion, concludes that the summation would not have an unduly prejudicial effect, it may permit counsel to suggest a monetary figure for the award or to illustrate damages for a unit of time multiplied by the expected duration of suffering"); Baron Tube Co. v. Transp. Ins. Co., 365 F.2d 858, 861, 864-65 (5th Cir. 1966) (en banc) (holding that counsel can argue "for damages for pain and suffering on a so-called 'unit of time' formula," provided there are safeguards in place, e.g., cautionary instructions, though "whether to allow such an argument and the protective features to be employed are matters vested, in the end, in the sound discretion of the trial court"); Pa. R.R. Co. v. McKinley, 288 F.2d 262, 266 (6th Cir. 1961) (refusing to reverse where counsel "suggested a per diem figure for pain suffered at various periods of time," concluding that district judges possess substantial discretion to control "the style and

Frog only so far.  To succeed, Señor Frog must also show that the error was harmful – i.e., that the error affected its "substantial rights," which in turn depends on whether the error "substantially swayed" the jury's verdict.  See Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 102 (1st Cir. 1997) (internal quotation marks omitted); see also Seahorse Marine Supplies, Inc., 295 F.3d at 82.  Certainly the fact that the jury gave Rodríguez exactly what her lawyer asked for suggests prejudice.  But that does not tell us all we need to know.  The key here lies in the jury instructions.  Did the judge tell the jury to disregard the lawyer's suggested numbers as she had promised?  If yes, were her words strong enough to draw all the sting from counsel's comments?  See Bielunas, 621 F.3d at 79 (noting that such an instruction might be a sufficient salve in

---

content of counsel's argument"); Waldron v. Hardwick, 406 F.2d 86, 89 (7th Cir. 1969) (concluding "that an inflexible rule treating per diem argument as reversible error is not advisable," adding that "the question should be left largely to the discretion of the trial judge as are other matters dealing with the style and content of argument"); Vanskike v. ACF Indus., Inc., 665 F.2d 188, 211 (8th Cir. 1981) (stressing that "limitation of counsel's argument to the jury on computation of damages is within the discretion of the district judge," adding that "[a]lthough we continue to condemn [jury] instructions requiring per diem mathematical calculations, we do not disapprove of per diem closing arguments [provided] such arguments are carefully controlled by the district court"); McDonald v. United Airlines, Inc., 365 F.2d 593, 595 (10th Cir. 1966) (indicating that whether to permit "a per diem damages argument . . . by counsel to the jury" is a "matter[] within the discretion of the trial judge").  As far as we can tell, only the Third Circuit stands with us.  See, e.g., Waldorf v. Shuta, 896 F.2d 723, 744 (3d Cir. 1990) (holding that lawyers may not "request a specific dollar amount for pain and suffering in [their] closing remarks").

certain situations); Río Mar Assoc., LP, SE v. UHS of P.R., Inc., 522 F.3d 159, 163 (1st Cir. 2008) (noting the presumption that jurors follow the district judge's clear instructions). Also, what did the judge tell the jury about pain-and-suffering damages under Puerto Rico law? And viewing the record through that legal lens, was the pain-and-suffering evidence so overwhelming that counsel's remarks mattered not in the grand scheme of things? We can answer none of these questions, however, because Señor Frog has not presented us with a transcript of the judge's final charge, which means Señor Frog loses this aspect of its new-trial bid. See, e.g., Campos-Orrego, 175 F.3d at 94; Moore, 47 F.3d at 10-12.

Next, Señor Frog says that Rodríguez's counsel's closing-argument comment that his client had come under "attack" in court requires a new trial. Not so. Assuming purely for argument's sake that counsel's statement crossed a line (which we in no way intimate), Señor Frog has not shown any prejudice. See, e.g., Gonzalez-Marin v. Equitable Life Assurance Soc'y, 845 F.2d 1140, 1147 (1st Cir. 1988) (noting that district judges have "considerable discretion" when it comes to policing lawyers' closing-argument comments, stressing that "[w]e will reverse only upon a showing of prejudice"). Counsel's "attack" comment was a small and unrepeated part of a fairly lengthy summation. And the judge sustained Señor Frog's objection right away. The judge probably also instructed the jury in the end that counsels'

-22-

statements in closing argument are not evidence, an instruction that can often lessen any potential harm. See, e.g., Bielunas, 621 F.3d at 79. But we cannot double-check our hunch against the transcript because Señor Frog did not give us what we need to carry out our review function. Given all of the circumstances, Señor Frog's complaint goes nowhere. See, e.g., Campos-Orrego, 175 F.3d at 94; Moore, 47 F.3d at 10-11.

Finally, Señor Frog cries foul over Rodríguez's counsel's remark in closing that Estrada had been deported back to Mexico under the terms of a plea agreement – a statement that supposedly turned the jury against Estrada. Even if we assume for the sake of discussion that Rodríguez's lawyer exceeded the bounds of fair argument, we cannot see how this fleeting comment could have unfairly prejudiced Señor Frog, see Gonzalez-Marin, 845 F.2d at 1147 – and, critically, Señor Frog spends no time explaining how it could have, see Casillas-Díaz, 463 F.3d at 83 (holding that litigants have "an unflagging obligation to spell out their contentions 'squarely and distinctly, or else forever hold [their] peace,'" adding that a cursory mention of a possible argument will not suffice) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). Ultimately, then, this new-trial argument, like the others, cannot succeed.

## The Remittitur Issue

Saying that most if not all of the $450,000 damage award represented compensation for pain and suffering, Señor Frog calls the figure conscience-shocking and asks us to reverse the judge's decision not to grant a remittitur. That is a very tall order. "Only rarely and in extraordinary circumstances" will we nix a jury's non-economic damages award. Bielunas, 621 F.3d at 80. That is especially true where, as here, the judge, "who saw and heard the evidence play out," has endorsed the award. Id. "Stepping lightly," we only look to see if the judge abused her discretion in not trimming the award – mindful, of course, that the defendant must prove that the "award is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" Id. (quoting Casillas-Díaz, 463 F.3d at 83).

Another obstacle looms large, however – one we have mentioned already, namely, the absence of a full record. Our review of the remittitur question is "inescapably 'fact-bound,'" id. (quoting Casillas-Díaz, 463 F.3d at 83), and we must analyze the facts "under the legal criteria" established by the jury charge, id. at 80-81; see also Casillas-Díaz, 463 F.3d at 83; Smith v. Kmart Corp., 177 F.3d 19, 30 (1st Cir. 1999). But because Señor Frog failed to furnish a transcript of the final charge, we cannot reach a reasoned decision on the remittitur issue. Consequently,

-24-

Señor Frog's remittitur challenge collapses.   <u>See</u>, <u>e.g.</u>, <u>Campos-Orrego</u>, 175 F.3d at 94; <u>Moore</u>, 47 F.3d at 10-12.

**What This All Means**

For the reasons recited above, we **<u>affirm</u>** the judgment below in all respects.   Costs to Rodríguez.

**<u>So Ordered</u>**.