Nora **CAMPOS–ORREGO**,
Plaintiff, Appellee,

v.

Alba **RIVERA, et al.,** Defendants,
Appellants.

No. 98–1318.

United States Court of Appeals,
First Circuit.

Heard March 2, 1999.

Decided May 4, 1999.

Sylvia Roger Stefani, Assistant Solicitor General, Puerto Rico Dep't of Justice, with whom Carlos Lugo Fiol, Solicitor General, and Edda Serrano Blasini, Deputy Solicitor General, were on brief, for appellants.

Judith Berkan, with whom Mary Jo Mendez–Vilella was on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN and CYR, Senior Circuit Judges.

SELYA, Circuit Judge.

This appeal requires us, *inter alia,* to address an important question as to the circumstances in which an award of punitive damages for a constitutional tort may endure without a corresponding award of compensatory damages.

The underlying litigation had its genesis in the employment of plaintiff-appellee Nora Campos–Orrego (Campos) with the Puerto Rico Comision para los Asuntos de la Mujer (Women's Rights Commission or Commission). Campos claims that defendants-appellants Alba Rivera, Olga Birriel Cardona, and Enid Gavilan Perez, her superiors at the Commission, retaliated against her for attempting to assist a victim of sexual harassment. A jury determined that Campos's claim had merit and awarded her damages. The appellants solicit our intervention, but their lackadaisical approach to appellate advocacy proves once again that "courts—like the Deity—are more prone to help those who help themselves." *Williams v. Drake,* 146 F.3d

44, 50 (1st Cir.1998). The short of it is that the appellants have squandered most of their assigned errors through defaults of various kinds. Hence, we limit our substantive review to the few remaining grounds (one of which involves the punitive damages issue mentioned above).

In the ordinary case, we would begin by limning the relevant factual background. Here, however, for reasons that will soon become apparent, we submit only a thumbnail sketch, drawn primarily from Campos's complaint.

Campos worked for the Women's Rights Commission for several years, principally as a staff attorney. In that capacity, she often counseled victims of gender-based discrimination. One such individual, whom we shall call Client A, met with Campos in 1991 and related a tale of sexual harassment at the hands of the Mayor of Bayamon, a high-level figure in the New Progressive Party (the political party to which the appellants all belong). Campos counseled Client A and explained her legal options, but Client A chose not to pursue her rights at that time.

In August 1994, after a brief interval during which she worked elsewhere, Campos was rehired by the Women's Rights Commission as a quondam consultant under a one-year contract. In this post, she not only functioned as a staff attorney, but also analyzed sexual harassment in Puerto Rico's public institutions. In November of 1994, Client A returned to the Commission's offices and requested a copy of her file. Campos supplied it. Client A proceeded to lodge a sexual harassment complaint against the Mayor on or about June 1, 1995.

The media pounced on Client A's story like a pride of hungry lions on a side of beef. Extensive coverage began as early

as June 2. The three appellants summoned Campos to a meeting that very day and interrogated her as to why she had given Client A a copy of the file. According to Campos, the appellants intimated that the matter should have been treated with greater discretion because it involved the Mayor. On June 3, two of the appellants discussed the incident on a popular radio show and implied that an unnamed employee (who could not have been anyone but Campos) was incompetent, or insubordinate, or both. By letter dated June 6, Rivera (the Commission's executive director) terminated Campos's employment effective June 30—and did so notwithstanding that, roughly a week before the story broke, Campos had accepted Rivera's offer to renew her contract for another year, commencing July 1, 1995. The next day, *El Día*, a major Spanish-language newspaper, published an article in which Rivera attributed the Commission's lack of action on Client A's complaint to Campos. The newspaper also reported that Campos would be terminated. Campos claims that the appellants posted the story in public view in the Commission's offices.

Campos brought suit against the three appellants in Puerto Rico's federal district court,[1] claiming that they had cashiered her because she appropriately aided Client A, rather than discouraging or attempting to derail Client A's embryonic sexual harassment complaint against a political heavyweight. Campos argued that her termination violated P.R. Laws Ann. tit. 29, § 155h (1995) (Law 17), which safeguards individuals against retaliation for affording assistance to persons who seek to mount sexual harassment claims. She likewise argued that the manner in which Rivera fired her abridged her right to procedural due process.[2]

---

1. Since Campos's complaint contained some federal claims, brought pursuant to 42 U.S.C. § 1983, the district court had original jurisdiction. *See* 28 U.S.C. § 1331. The court had supplemental jurisdiction over Campos's claims under Puerto Rico law, as those claims

arose out of a common nucleus of operative fact. *See id.* § 1367(a), (e).

2. Campos's complaint also contained general tort claims, a defamation claim, and a claim that the appellants had violated her First

The appellants denied Campos's allegations and the matter was tried to a jury over a period of 12 days. The docket indicates that, at the close of Campos's case in chief and again at the close of all the evidence, the appellants moved for judgment ·as a matter of law. *See* Fed. R.Civ.P. 50. In respect to the two causes of action with which we are concerned, they claim to have asserted that Campos lacked standing to charge retaliation under Law 17 and that she had no property interest sufficient to support her procedural due process claim. In any event, the district court denied the appellants' motions on both occasions. Insofar as is material here, the jury returned a general verdict in Campos's favor, awarding her $80,000 in compensatory damages against the appellants, jointly and severally, on the Law 17 count and $10,000 in punitive damages against Rivera on the due process count.

Campos promptly moved for the entry of a judgment embodying the jury's award but augmenting it by (1) doubling the compensatory damages on the Law 17 claim,[3] (2) ordering reinstatement, and (3) deducting $1 from the punitive damage award and reallocating it as nominal damages on the due process claim (or, in the alternative, merely reaffirming the punitive damage award). The appellants opposed this motion. They contended that Campos was not entitled to statutory doubling because the jury had not been instructed on this potentiality, that reinstatement should be denied (or, at least, not ordered without an evidentiary hearing), and that the punitive damage award should be vacated due to the lack of any supporting compensatory

damages. In respect to the Law 17 claim, the district court doubled the compensatory damages (to $160,000), eschewed an evidentiary hearing, and ordered Campos's reinstatement. In respect to the due process claim, the court recast $1 from the punitive damage award as nominal damages, thus keeping the aggregate amount intact but reducing punitives to $9,999. The appellants then renewed their motion for judgment as a matter of law, but to no avail. This appeal followed.

It is the nature of the adjudicative process that appellate courts apply discerned principles of law to facts established in a trial court or an administrative tribunal. Parties seeking appellate review must furnish the court with the raw materials necessary to the due performance of the appellate task. *See Moore v. Murphy*, 47 F.3d 8, 10 (1st Cir.1995). Applicable procedural rules recognize this division of labor and place the burden squarely on the appealing party to supply so much of the record of the proceedings below as is necessary to enable the appellate court to conduct informed review. *See* Fed. R.App. P. 10(b); *see also Jardines Bacata, Ltd. v. Diaz–Marquez*, 878 F.2d 1555, 1559 n. 5 (1st Cir.1989); *Real v. Hogan*, 828 F.2d 58, 60 (1st Cir.1987). When an appellant shirks this responsibility, the law exacts a condign penalty:

> Should an appellant spurn this duty and drape an incomplete record around the court's neck, the court in its discretion either may scrutinize the merits of the case insofar as the record permits, or may dismiss the appeal if the absence of

Amendment rights. Inasmuch as these claims are not at issue in this appeal, we make no further mention of them.

3. This request stemmed from Law 17 itself, which provides in pertinent part:

Any person responsible for sexual harassment in employment as defined by [Law 17] shall incur civil liability: (1) for a sum equal to double the amount of the damages that the action has caused the employee or

job applicant; or (2) for a sum of not less than three thousand (3,000) dollars at the discretion of the court, in those cases in which pecuniary damages cannot be determined. In the judgment in civil actions under the above provisions, the court shall order the employer to hire, promote or reinstate the employee in his job and to cease and desist of the act in question.

P.R. Laws Ann. tit. 29, § 155j (1995).

a full transcript thwarts intelligent review.

*Moore,* 47 F.3d at 10.

These principles pertain here. The appellants, who now strive to advance a myriad of factbound arguments, chose to proceed in this forum armed only with a transcript of the district judge's charge to the jury. They did not secure a transcript of any other portion(s) of the protracted proceedings below. This omission disables us from affording reasoned consideration to most of the issues that the appellants seek to raise. We offer two illustrations of why these arguments are forfeit.

■ The most obvious example pertains to the appellants' sufficiency-of-the-evidence argument. They calumnize the district court's denial of their motions for judgment as a matter of law on the basis that "[t]here was absolutely no evidence to support a claim under Law 17 that [their] conduct was gender-based." Appellants' Brief at 10. In essence, their argument is that Campos was fired for her lack of loyalty to her superiors, not because of her gender or for facilitating the filing of a sexual harassment claim against a political icon. Appellate judges are not mind readers, and it is impossible for us to evaluate this contention without recourse to an accurate record of the evidence presented at trial. By failing to furnish a trial transcript, the appellants defaulted the point.[4]

■ Another example of how the appellants' failure to furnish a transcript negatively impacts the instant appeal relates to Rivera's challenge to the jury's determination that she was liable for a due process violation. For Campos's job to be protected by the procedural safeguards of the Due Process Clause, she must have had "a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Rivera asserts that Campos was hired for a fixed period; that her contractual term simply was allowed to expire; and that, therefore, she could show no such constitutionally protected property interest. But this issue, too, is fact-dependent. Campos retorts that she adduced evidence of a contract extension; and that, in all events, she crossed the constitutional threshold by introducing probative evidence that Rivera violated her constitutionally protected liberty interest by handling her termination in a public (and egregiously stigmatizing) fashion. *See, e.g., Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (explaining that reputational damage incident to discharge under some circumstances may invade a constitutionally protected liberty interest); *Roth,* 408 U.S. at 573, 92 S.Ct. 2701 (noting that a state could refuse reemployment in such a stigmatizing fashion as to implicate an employee's constitutionally protected liberty interest). Because there is no feasible way for us to gauge these competing versions of events without a trial transcript, Rivera, *qua* appellant, necessarily loses by default.

We think that these two examples suffice, and that no useful purpose would be served by itemizing the other components of the appellants' asseverational array that have been rendered nugatory by their failure to furnish a suitable record. Withal, the appellants do assert some claims of error that might be susceptible to consideration without recourse to a transcript, and it is to those claims that we now turn.

4. The lack of a transcript frustrates appellate review of the denial of a motion for judgment as a matter of law in another way as well. In such a situation, an appellant bears the burden of showing that the ground asserted on appeal was raised in her Rule 50 motion below. *See, e.g., Correa v. Hospital San Francisco,* 69 F.3d 1184, 1196 (1st Cir.1995) ("The movant cannot use [a post-trial] motion as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for a directed verdict."). Absent a transcript, we are unable to tell precisely what grounds the appellants articulated when they orally requested judgment as a matter of law at the close of the evidence in the trial court.

■ The first such claim poses an intriguing question: Whether Law 17's protection against retaliatory action by an employer due to an employee's participation in the lodging or investigation of a sexual harassment complaint extends to retaliation by an employer other than the harassment victim's employer? On one hand, Law 17's reference to an "employer" conceivably could be limited to a common employer of both the victim of the harassment and the victim of the retaliation—in which event Campos (who did not work for the Mayor or for the municipality) would have no cause of action.[5] On the other hand, the inexplicit statutory language, coupled with the remedial spirit animating Law 17, might well support an interpretation that would allow an action against *any* employer engaging in such retaliatory acts, whether or not that employer also had employed the harassment victim. Insofar as we can tell, the Puerto Rico courts have not resolved this conundrum.

Regardless of the interesting nature of the question, we must refrain from answering it. This issue has been forfeited because the appellants failed to raise it squarely in the trial court. (At least, this is how it appears from the incomplete record available to us.) We have reiterated, with a regularity bordering on the echolalic, that a party's failure to advance an issue in the *nisi prius* court ordinarily bars consideration of that issue on appellate review. *See, e.g., LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 510 (1st Cir.1998); *Teamsters, Chauffeurs, Warehousemen and Helpers Union v. Superline Transp. Co.,* 953 F.2d 17, 21 (1st Cir.1992); *McCoy v. Massachusetts Inst. of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Although we have permitted an occasional exception to

this rule in extraordinary circumstances, *see, e.g., National Ass'n of Soc. Workers v. Harwood,* 69 F.3d 622, 627–29 (1st Cir. 1995), the case at hand fits comfortably within the sweep of the general rule, not within the long-odds exception to it. Consequently, we treat the statutory construction issue as waived, and take no view of its ultimate resolution.

■ A second issue falls by the wayside for much the same reason. The appellants contend on appeal that the only proper defendant in a retaliation case under Law 17 is the plaintiff's actual employer (here, the Commission), not individual managers. But, no written motion in the record advances this theory of defense, and Campos denies that the appellants argued the point below. Since the appellants neglected to produce a transcript, we must treat this argument, too, as by the boards. Hence, we will not address it, except to say that plain-error review is not in order, for the error—if there is one—is not obvious, and no patent injustice appears in holding the appellants to the readily foreseeable consequences of their own trial tactics.

These multiple defaults do not entirely close the door on this appeal, but they narrow the aperture considerably. In the last analysis, they leave two preserved assignments of error susceptible to meaningful review on the meager record furnished to us.

■ The first contests the trial judge's authority to double the jury's compensatory damage award without having instructed the jury that such doubling would occur. In the appellants' view, this course of action usurped the jury's responsibility for determining damages and thereby violated the Seventh Amendment.

**5.** The statute itself provides, somewhat cryptically:

An employer shall be held liable pursuant to the provisions of [Law 17] when he carries out any action that results in adversely affecting the opportunities, terms and working conditions of any person who has rejected the employer's practices that are in conflict with the provisions of [Law 17] or who has filed a complaint or suit, given testimony, collaborated or participated in any other manner in an investigation, procedure or hearing that is initiated under [Law 17].

P.R. Laws Ann. tit. 29, § 155h (1995).

This contention presents a pure question of law, and, accordingly, our review is plenary. *See In re Cusumano*, 162 F.3d 708, 713 (1st Cir.1998); *In re Howard*, 996 F.2d 1320, 1327 (1st Cir.1993).

■■■■■ It is common ground that judges must respect the boundaries of a jury's province, and that judicial trespass may violate a litigant's Seventh Amendment rights. *See Dimick v. Schiedt*, 293 U.S. 474, 486–87, 55 S.Ct. 296, 79 L.Ed. 603 (1935). No such trespass occurred here. The appellants' argument to the contrary conflates two related, but not congruent, concepts: damages and judgment. In a civil jury trial, the jury customarily must determine the damages that the plaintiff has sustained. *See id.* at 485–86, 55 S.Ct. 296. It is the responsibility of the court, however, to enter judgment.

■■■■ This case aptly illustrates the dichotomy. Law 17 decrees that violators "incur civil liability ... for a sum equal to double the amount of the damages that the action has caused the employee or job applicant...." P.R. Laws Ann. tit. 29, § 155j. When a jury trial has been demanded and the case is tried in a federal court, such a scheme charges the jury with calculating the amount of damages sustained by the victim as a matter of fact. *See Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1243 (5th Cir.1974) (considering a parallel issue under federal antitrust statutes). Once the jury has completed its task, the court then must follow the statutory edict and ensure that the judgment awards the prevailing party twice the sum calculated by the jury. *See id.* Viewed in this light, the court below followed the requirements of the law precisely and flouted no constitutional commands.

The appellants further assert that, at the very least, the judge should have told the jury that Law 17 provided for the subsequent doubling of any compensatory damage award. This assertion is fatally flawed. For one thing, the scant record that the appellants have supplied does not indicate that they either requested such an instruction or objected in a timeous fashion to its omission. They have, therefore, forfeited the right to complain. *See Elliott v. S.D. Warren Co.*, 134 F.3d 1, 5–6 (1st Cir.1998); *see also* Fed.R.Civ.P. 51.

■■■■■ For another thing, in situations in which multiple damage awards are statutorily provided, "it is generally not advisable to inform a jury of the [multiple damage] provisions ... because of the danger that a jury may reduce a plaintiff's award to account for [the multiplication]." *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 860 (1st Cir.1985). Indeed, some courts take the position that it constitutes reversible error to give an instruction that informs a jury of the potential for multiplication of damages. *See, e.g., HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45–46 (2d Cir.1994); *Arnott v. American Oil Co.*, 609 F.2d 873, 889 n. 15 (8th Cir.1979); *Pollock & Riley*, 498 F.2d at 1242–43. We need not decide that question today. Suffice to say that, at the very least, it is within a trial judge's discretion not to inform a civil jury that the judge ultimately will apply a multiplier to any compensatory award. *Cf. Evans v. Avery*, 100 F.3d 1033, 1040 (1st Cir.1996) (explaining that district courts enjoy "wide discretion ... to fashion jury instructions as they see fit," and confirming that a trial court has discretion either to inform the jury of a statutory cap on damages or to withhold such information).

The appellants' second preserved point concerns the district court's modification of the damage award on the due process claim. The affected appellant, Rivera, argues that a verdict for compensatory damages is a *sine qua non* to a verdict for punitive damages; that the lower court therefore should have vacated the punitive damage award on the due process count; and that, by shifting $1 from punitive damages to nominal damages and leaving the remainder of the punitive award in place, the court exceeded its authority. Rivera's challenge implicates both the sufficiency

*vel non* of stand-alone punitive damage awards and the power of the district court to award nominal damages for a constitutional violation. Thus, her challenge presents questions of law, subject to plenary review.

■■■■ Rivera's argument proceeds from two propositions with which we are in general agreement. First, the Seventh Amendment flatly prohibits federal courts from augmenting jury verdicts by additur. *See Dimick,* 293 U.S. at 486–87, 55 S.Ct. 296. Second, most punitive damage awards are insupportable if not undergirded by a predicate award of either compensatory or nominal damages. *See Kerr–Selgas v. American Airlines, Inc.,* 69 F.3d 1205, 1214 (1st Cir.1995). The question reduces to whether these propositions apply to, and require reversal or vacatur in, this case.

Though couched in terms of familiar principles, Rivera's objection actually rests on a fundamental misapprehension. While it is true that in a typical state-law tort case punitive damages unaccompanied by either compensatory or nominal damages cannot stand, *see, e.g., Cooper Distrib. Co. v. Amana Refrig'n, Inc.,* 63 F.3d 262, 281–83 (3d Cir.1995) (applying New Jersey law); Restatement (Second) of Torts § 908 cmts. b, c (1979), a section 1983 case premised on a constitutional violation evokes a different set of considerations. Several respected courts have ruled persuasively that, as a matter of federal law, a punitive damage award which responds to a finding of a constitutional breach may endure even though unaccompanied by an award of compensatory damages.[6] *See, e.g., King v. Macri,* 993 F.2d 294, 297–98 (2d Cir.1993); *Erwin v. County of Manitowoc,* 872 F.2d 1292, 1299 (7th Cir.1989). The Third Circuit explained the rationale for such a rule over forty years ago:

[I]f it be once conceded that [punitive] damages may be assessed against the wrongdoer, and, when assessed, may be taken by the plaintiff,—and such is the settled law of the federal courts,—there is neither sense nor reason in the proposition that such additional damages may be recovered by a plaintiff who is able to show that he has lost $10, and may not be recovered by some other plaintiff who has sustained, it may be, far greater injury, but is unable to prove that he is poorer in the pocket by the wrongdoing of defendant.

*Basista v. Weir,* 340 F.2d 74, 87–88 (3d Cir.1965) (citations and internal quotation marks omitted). Should this circuit follow this line of authority—a matter on which we need not opine today, given the peculiar procedural posture in which the issue arises, *see infra*—it would override contentions like Rivera's.

■■■ Here, however, there is a rub. The district court specifically instructed the jury that punitive damages "may be allowed only if you should first award the plaintiff Campos a verdict for actual or compensatory damages on the [procedural due process] cause of action." Neither party objected to this instruction, and, thus, it became the law of the case. *See Milone v. Moceri Family, Inc.,* 847 F.2d 35, 38–39 (1st Cir.1988). Although the law of the case doctrine is not totally rigid, *see United States v. Rivera–Martinez,* 931 F.2d 148, 150–51 (1st Cir.1991) (explaining that the doctrine encompasses a "modicum of residual flexibility"), we nonetheless are reluctant to depart cavalierly from it.

■■■■ In this instance, we need not decide whether Campos has lost the benefit of favorable legal authority by failing to object to the judge's charge. This is so because, even if the law of the case took hold, the jury's verdict on the due process

---

6. Our decision in *Kerr–Selgas* does not conflict with this rule. That case involved a *statutory* claim, brought pursuant to 42 U.S.C. § 1981a, rather than a constitutional violation. *See Kerr–Selgas,* 69 F.3d at 1214. Giv-

en the Supreme Court's treatment of the latter type of case in *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), discussed *infra,* this distinction possesses decretory significance.

count would not have been void, but only internally inconsistent—and, thus, repairable. Parties confronted by an internally inconsistent jury verdict have an obligation to call the inconsistency to the trial judge's attention. *See, e.g., Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 8 (1st Cir. 1993); *Austin v. Lincoln Equip. Assocs., Inc.*, 888 F.2d 934, 939 (1st Cir.1989). The appellants concede that they neither pointed out the inconsistency nor asked that the jury be reinstructed. For her part, Campos says that "[p]rior to the close of the session [at which the jury returned its verdict]," she signaled the inconsistency by announcing that she would ask the court for nominal damages (to be deducted from the punitive damage award). Appellee's Brief at 7. Rivera neither challenges this assertion nor claims that she requested that the jury retire to deliberate on the nominal damage request.[7] We think that Rivera's silence at this critical juncture amounted to a waiver of any right to trial by jury on the issue of nominal damages (which had not been covered in the original jury instructions), and she cannot now be heard to complain that this issue was left to the judge. *Cf. Anderson v. Cryovac, Inc.*, 862 F.2d 910, 917–18 (1st Cir.1988) (holding that when a party acquiesces in the omission of a factual issue from special interrogatories to the jury, the trial judge's post-verdict resolution of the omitted issue does not transgress the Seventh Amendment).

From that point forward, the pieces fall easily into place. The district court gave Campos $1 in nominal damages at a later date, subtracting that sum from the $10,000 punitive damage award. One can hardly quarrel with this improvisation. Over two decades ago, the Supreme Court held that nominal damages are recoverable on a finding of a procedural due process violation, even without a corollary finding of injury or an award of compensatory damages. *See Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The *Carey* Court reasoned that

> [b]ecause the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.

*Id.* at 266, 98 S.Ct. 1042 (citations omitted).

 Extrapolating from *Carey*, other courts of appeals have held that when a jury finds a violation of an "absolute" constitutional right yet declines to award compensatory damages, the district court ordinarily should award nominal damages. *See, e.g., Cabrera v. Jakabovitz*, 24 F.3d 372, 391 (2d Cir.1994); *Ruggiero v. Krzeminski*, 928 F.2d 558, 563–64 (2d Cir.1991); *Farrar v. Cain*, 756 F.2d 1148, 1152 (5th Cir.1985). We agree with these courts and deem *Carey* controlling here. Accordingly, we hold that when a jury in a case brought pursuant to 42 U.S.C. § 1983 finds a violation of the plaintiff's procedural due process rights, but fails to award compensatory damages, nominal damages are available to the plaintiff.

Let us be perfectly clear. We do not suggest that this entitlement is automatic, but, rather, it is incumbent upon the plaintiff to make a timely request for nominal damages. *Cf. Kerr–Selgas*, 69 F.3d at 1214–15 (emphasizing, in regard to a claim under 42 U.S.C. § 1981a, that a plaintiff is not "automatically entitled" to nominal damages, and suggesting the need for "a timely request"); *Cooper*, 63 F.3d at 281–83 (holding to like effect in a tort case).

 In some circuits, a plaintiff must request nominal damages ex ante, that is, by seeking a jury instruction to that effect,

---

7. The briefs and the fragments of the record available to us are tenebrous as to whether the jury was still in the jury box when Campos made her request. Given the lack of a transcript and the appellants' responsibility for that void, we assume, favorably to Campos, that such was the case.

on penalty of waiver. *See, e.g., Cooper,* 63 F.3d at 281–84; *Sims v. Mulcahy,* 902 F.2d 524, 533–36 (7th Cir.1990). In dictum, *Kerr–Selgas* adumbrates a more expansive approach. *See Kerr–Selgas,* 69 F.3d at 1215 (denying relief because "Kerr neither requested a jury instruction on nominal damages, nor asked the district court for [nominal damages]" after the verdict had been returned), and we think that the interests of justice warrant such expansiveness. Accordingly, we hold that a timely request for nominal damages can be made either ex ante (to the jury) or ex post (to the judge). Thus, a plaintiff may request the judge to instruct the jury on nominal damages, or in the absence of such an instruction, may ask the trial court for nominal damages on the occasion of, or immediately after, the return of the verdict. In this instance, the jury was not charged on nominal damages, but Campos made a sufficiently prompt post-verdict request. We therefore affirm the award of nominal damages.[8]

That ends the matter. The award of nominal damages bridges any gap attributable to the absence of a compensatory damage award. *See id.* at 1214. Rivera's objection to the judgment is, therefore, bootless.

## IV. CONCLUSION

We need go no further. On this exiguous, waiver-riddled record, only a smattering of issues are amenable to review. Limiting our substantive consideration to those few issues, we discern no reversible error. Accordingly, the judgment below will be

*Affirmed. Costs to appellee.*

---

[8.] We take no view of whether the district court could have awarded nominal damages in addition to the punitive damage award rather than subtracting the former from the latter. Suffice to say that Campos—the only party harmed by the subtraction—has not complained of it.