**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROBERT STOEDTER,

     Plaintiff - Appellee,

v.

KENNETH C. GATES and KENYON T.
MADSEN,

     Defendants - Appellants.

No. 15-4020
(D.C. No. 2:12-CV-00255-BSJ)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **SEYMOUR**, and **MORITZ**, Circuit Judges.
_____

    Robert Stoedter sued officers Kenneth Gates and Kenyon Madsen (the

defendants) under 42 U.S.C. § 1983, alleging that they violated his Fourth

Amendment right to be free from unreasonable seizure. After a jury trial, the district

court granted judgment as a matter of law for Stoedter on this issue of whether the

defendants violated the Fourth Amendment. And because the court had previously

determined that the contours of that right were clearly established at the time of the

alleged violation, the district court rejected the defendants' qualified immunity

defense. Finally, after the jury declined to award Stoedter any damages for the Fourth

_____

[*] This order and judgment isn't binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Amendment violation, the district court amended the judgment to award him nominal damages.

The defendants appeal, arguing that the district court erred in (1) rejecting their qualified immunity defense; (2) granting Stoedter's motion for judgment as a matter of law[1] under Fed. R. Civ. P. 50(a); and (3) amending the judgment to award Stoedter nominal damages. Because we agree that the defendants violated Stoedter's clearly established rights under the Fourth Amendment and that the award of nominal damages was therefore mandatory, we affirm.

## BACKGROUND

On a November afternoon in 2010, a motorist called 911 to report that he saw a man take a shotgun from the trunk of a car into a house in Riverton, Utah. The defendants, officers with the Unified Police Department of Greater Salt Lake, responded to this "man-with-a-gun" call. Aplt. Br. 34.

As the defendants approached the Riverton home on foot, they observed two men—Stoedter and his uncle, Michael Jacobson—on the front porch. Stoedter, who was wearing jeans and a t-shirt and smoking a cigarette, matched the 911 caller's description of the man with the shotgun. The defendants didn't see a gun, but later

---

[1] Throughout the briefing and in the record, the parties and the district court refer to Stoedter's Fed. R. Civ. P. 50(a) motion as a motion for "directed verdict." *See, e.g.*, Aplt. Br. 11; Aplee. Br. 30; Reply Br. 2; App. 298, 325, 343. But a 1991 amendment "abandon[ed] th[at] familiar terminology" in favor of the term "judgment as a matter of law." *See* Fed. R. Civ. P. 50(a) advisory committee's note to 1991 amendment. Accordingly, we use the term "judgment as a matter of law" here.

2

testified that Jacobson's heavy coat was large enough to conceal one. According to Gates, the men on the porch appeared "somewhat relaxed." App. 44.

Despite the men's "somewhat relaxed" demeanor, *id.*, the defendants approached with their weapons drawn and pointed at the ground, and Gates immediately ordered the men to put their hands up and come off the porch. According to the defendants, Stoedter and Jacobson instead responded with some choice profanities. But after three minutes, both men complied with the defendants' commands. Gates then handcuffed Stoedter. Moments later, after the defendants learned that Stoedter was returning with the shotgun from a hunting trip, the defendants released Stoedter from the handcuffs.

As relevant here, Stoedter filed suit against the defendants under § 1983, alleging that they violated his Fourth Amendment right to be free from unreasonable seizure.[2] The defendants moved for summary judgment, asserting qualified immunity. Stoedter moved for summary judgment on, inter alia, the issue of whether the defendants unreasonably seized him. The district court denied both motions, but noted that (1) the defendants didn't have reasonable suspicion of a crime when they approached the men on the porch, and (2) the law was clearly established that officers can't conduct investigative detentions without reasonable suspicion.

The case proceeded to a jury trial. At the close of evidence, the parties each moved for judgment as a matter of law. The district court denied the defendants'

---

[2] Stoedter also brought various other claims, but the parties don't address them on appeal. Thus, we confine our analysis to the unreasonable seizure claim.

3

motion, in which they reasserted their qualified immunity defense. But it granted Stoedter's motion, ruling that the defendants unreasonably seized Stoedter as a matter of law. The defendants then requested a nominal-damages instruction, and the district court denied their request. Stoedter neither requested a nominal-damages instruction nor objected to the defendants' request or the district court's refusal to grant it. After the jury found that Stoedter suffered no actual or compensatory damages, the district court entered judgment for the defendants.

Stoedter then filed a motion for judgment as a matter of law under Fed. R. Civ. P. 50, or in the alternative, for a new trial under Fed. R. Civ. P. 59. In this post-judgment motion, Stoedter sought damages generally. And he specifically sought nominal damages, in addition to actual damages, in his reply memorandum. The district court granted in part Stoedter's post-judgment motion, finding that Stoedter didn't waive the argument that he was entitled to nominal damages and that he was entitled to nominal damages as a matter of law. The district court then found it had plainly erred in failing to submit a nominal-damages instruction to the jury and amended the judgment to award Stoedter one dollar in nominal damages. The defendants appeal.

## DISCUSSION

The defendants first challenge the district court's order granting Stoedter's Rule 50(a) motion on the issue of whether the defendants unreasonably seized him, arguing that the district court (1) applied the wrong test for determining whether the seizure was unreasonable and (2) failed to resolve all reasonable fact questions in the

4

defendants' favor. Alternatively, even assuming they violated Stoedter's constitutional right to be free from unreasonable seizure, the defendants next argue that the district court erred in defining the contours of that right at too high a level of generality when it rejected the defendants' qualified immunity defense. Finally, the defendants argue that the district court erred in granting Stoedter's post-judgment motion and in amending the judgment to award him nominal damages.

## I.     The district court didn't err in granting Stoedter's Rule 50(a) motion on the issue of whether the defendants unreasonably seized him.

We review de novo the district court's order granting Stoedter's Rule 50(a) motion, applying the same standards as the district court. *Helmer v. Goodyear Tire & Rubber Co.*, 828 F.3d 1195, 1199 (10th Cir. 2016). The district court may grant a Rule 50(a) motion "only if the evidence points but one way and is susceptible to no reasonable inferences [that] may support the opposing party's position." *Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1180 (10th Cir. 1989). "On review, we examine the evidence in the light most favorable to [the defendants], extending to [them] the benefit of all reasonable inferences." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1339 (10th Cir. 1998).

Here, the district court granted Stoedter's Rule 50(a) motion based in part on a finding that the defendants failed "to use the least intrusive method of acquiring information." App. 339. But as the defendants correctly point out, the Fourth Amendment doesn't require officers to use the least intrusive method of acquiring information. *See Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1075

5

(10th Cir. 2010). Accordingly, we agree with the defendants that the district court erred to the extent it suggested that was the applicable test for assessing whether they unreasonably seized Stoedter.

Yet that doesn't necessarily mean the defendants are entitled to reversal. To obtain that result, the defendants must do more than establish that the district court applied the wrong test; they must also establish that applying the correct test would likely yield a different result. *See* 28 U.S.C. § 2111 (requiring us to disregard errors that don't "affect the substantial rights of the parties"); *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) (explaining that "party seeking reversal normally must explain why the erroneous ruling caused harm"); *see also Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) ("[Appellants] must come ready *both* to show the district court's error and, when necessary, to explain why no other grounds can support affirmance of the district court's decision.").

Accordingly, our first task is to determine the test the district court should have applied. And in performing that task, we find particularly relevant both (1) some of the district court's intermediate rulings below; and (2) the defendants' failure to adequately challenge those intermediate rulings on appeal.

Specifically, the district court made three critical findings before granting Stoedter's Rule 50(a) motion on the issue of whether the defendants violated Stoedter's rights under the Fourth Amendment. First, the district court concluded that the defendants did, in fact, seize Stoedter. Second, it concluded that the seizure occurred at the moment the defendants ordered Stoedter to put his hands up and step

6

off the porch; according to the district court, that order "either . . . arrested" Stoedter or, at the very least, "detained" him. App. 1105; *see United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir. 1984) (explaining that investigative detentions and arrests are both seizures that implicate Fourth Amendment). Finally, the district court concluded that at the moment the defendants seized Stoedter, they lacked even reasonable suspicion of any criminal activity.[3]

Critically, the defendants' opening brief doesn't challenge the first two of these three conclusions—i.e., that the defendants seized Stoedter and that they did so at the very beginning of the encounter. On the contrary, the defendants themselves characterize the encounter as a "*Terry* stop," "an investigative detention," and a "seizure." Aplt. Br. 28, 29, 33, 36, 37; *see Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) ("An investigative detention, which is also referred to as a Terry stop, is a seizure within the meaning of the Fourth Amendment . . . ."). And while the defendants don't explicitly concede the timing of that seizure, their opening brief

---

[3] Rather than asking (1) whether the defendants seized Stoedter, and (2) if so, whether the defendants had reasonable suspicion or probable cause to justify that seizure, the district court instead reversed that inquiry. It began by asking whether the defendants had "reasonable suspicion or probable cause when they arrived upon the scene and approached" Stoedter. App. 1103. And because the district court concluded that the defendants had neither, it reasoned that they necessarily lacked authority to engage in anything but a consensual encounter. Finally, because the defendants' interaction with Stoedter "exceeded . . . a consensual encounter," the district court concluded that the defendants "violated the Fourth Amendment . . . from the beginning." *Id.* at 1105. But the order of the district court's inquiry doesn't alter its substance: the district court ultimately ruled that the defendants seized Stoedter; that they did so at the very beginning of the encounter; and that they did so without reasonable suspicion.

7

doesn't challenge the district court's ruling that the seizure began at the moment the defendants ordered Stoedter to put his hands up and step off the porch.[4]

Accordingly, we proceed under the assumption that the district court correctly determined that the defendants seized Stoedter and that they did so at the very beginning of the encounter. *See Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) (noting that "[a]rguments inadequately briefed in the opening brief are waived"). And that means the appropriate test for determining whether the defendants violated Stoedter's Fourth Amendment right to be free from unreasonable seizure is whether, at that moment, the defendants "had 'objectively reasonable articulable suspicion' that [Stoedter] committed or [was] about to commit a crime." *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010) (quoting *United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003)).

In applying that test, we are once again guided by the district court's analysis below and the defendants' treatment of that analysis on appeal. Ruling from the bench, the district court concluded that the defendants lacked reasonable suspicion when they seized Stoedter. In reaching that conclusion, the district court noted that before the defendants arrived at the home, they knew only that (1) a 911 caller

---

[4] In their reply brief, the defendants argue for the first time that fact issues remained regarding the moment the seizure began. We decline to address this argument because the defendants fail to raise it in their opening brief. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief . . . .").

8

reported seeing a male wearing jeans and a gray T-shirt enter the home with a shotgun; and (2) two vehicles were parked in front of the home. Once they arrived, the defendants saw two men—one of whom matched the 911 caller's description—smoking on the front porch. There was no shotgun visible. The men made "no menacing movements" and "no effort to run." App. 1100.

As the district court pointed out, "the [911 caller] reported no crime" and "it's not unlawful to possess a shotgun" in Utah. *Id.* at 1099. Moreover, the district court reasoned, the encounter "took place in the middle of the afternoon, in an area not known to be dangerous," and neither man made any furtive movements. *Id.* at 1102. Thus, the district court reasoned that under the totality of the circumstances, the defendants had no reasonable suspicion of any crime at the moment they seized Stoedter.

On appeal, the defendants argue that this analysis is flawed because it fails to account for what they see as several disputed issues of material fact. And they point out that "where there are disputed issues of material fact, the question of reasonableness underlying a Fourth Amendment violation is for the jury." Aplt. Br. 35 (quoting *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253 (10th Cir. 2013)).

The defendants are correct that the reasonableness of a seizure is generally a question for the jury when issues of material fact remain. *See Cavanaugh*, 718 F.3d at 1253. Likewise, they're correct that we must extend to them the benefit of all reasonable inferences in determining whether judgment as a matter of law was appropriate. *Davis*, 142 F.3d at 1339.

9

But to the extent the defendants argue that (1) disputed questions of material fact remain and (2) the district court failed to view those disputed facts in the light most favorable to them, the defendants point only to alleged facts and circumstances that arose *after* they seized Stoedter. And by then it was too late: the unreasonable seizure (and thus the Fourth Amendment violation) had already occurred.[5] *See Lundstrom*, 616 F.3d at 1120 (explaining that officers must have particularized reasonable suspicion *before* initiating an investigative detention).

Specifically, the defendants point to evidence that Stoedter shouted profanities at the defendants and refused, for three minutes, to obey their commands to show them his hands and come off the porch. And they argue that the district court should have accepted their expert's opinion that such behavior "often indicates criminal activity and can be a precursor to an attack." Aplt. Br. 36. But for the reasons discussed above, we assume that the defendants seized Stoedter when they approached with guns drawn and ordered him to put his hands up and step off the porch. And Stoedter's alleged behavior after that seizure—i.e., his use of profanity and refusal to comply with the defendants' commands—couldn't retroactively provide the defendants with the reasonable suspicion they needed to seize him in the

---

[5] In their reply brief, the defendants point for the first time to disputed facts that they say establish they had reasonable suspicion when they approached the porch. For instance, they note that Stoedter's car was parked in the street instead of the driveway, and that neither man was wearing hunting gear. But because the defendants don't raise these arguments in their opening brief, we decline to address them. *See M.D. Mark, Inc.*, 565 F.3d at 768 n.7.

first place. Accordingly, even assuming the district court erred in failing to construe this evidence in the light most favorable to the defendants, that error was harmless.

In short, we agree with the defendants that the district court erred in suggesting they violated the Fourth Amendment by failing to use the least intrusive means of investigation available to them. But we nevertheless affirm the district court's ultimate ruling granting Stoedter's Rule 50(a) motion because (1) the defendants fail to challenge the district court's ruling that the defendants seized Stoedter when they ordered him to put his hands up and step off the porch; and (2) the defendants fail to identify any facts in their opening brief that would allow a reasonable jury to conclude that, at that point, the defendants had the requisite reasonable suspicion to seize him.

## II.    The defendants aren't entitled to qualified immunity.

Even assuming they violated Stoedter's constitutional rights, the defendants maintain that the district court improperly rejected their qualified immunity defense. At trial, the plaintiff bears the burden of persuasion "to overcome qualified immunity by showing a violation of clearly established federal law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

For the reasons discussed above, we accept the district court's conclusion that, as a matter of law, the defendants violated Stoedter's Fourth Amendment right to be free from unreasonable seizure when they seized him without reasonable suspicion. Accordingly, the only remaining question is whether "[t]he contours of" that right were "'sufficiently clear' that every 'reasonable official would have understood that

11

what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). And to satisfy that test, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Estate of Booker*, 745 F.3d at 411 (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008)).

Here, the district court concluded that at the time of the constitutional violation, it was "clearly established that a police officer [couldn't] effect an investigative detention without reasonable suspicion."[6] App. 172. According to the defendants, this standard defines the relevant right at too high a level of generality. Instead, the defendants argue, the proper inquiry is whether it was clearly established that they couldn't respond to a "'man-with-a-gun' 911 call with their firearms drawn and that they [couldn't] point their firearms and use handcuffs to safely investigate the call for six minutes." Aplt. Br. 34.

We agree with the defendants that the district court defined the right at too high a level of generality. *See al-Kidd*, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). But we disagree that the district court should have instead applied the

---

[6] The district court initially rejected the defendants' qualified-immunity defense at the summary judgment stage. The defendants then renewed that defense in moving for judgment as a matter of law at the conclusion of the evidence. The district court denied that motion without elaboration.

12

test that the defendants articulate. Instead, the appropriate inquiry is whether the defendants had "arguable reasonable suspicion"—i.e., whether "a reasonable officer could have believed that [reasonable suspicion] existed" to support Stoedter's seizure.[7] *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206-07 (10th Cir. 2008) (alteration in original) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1120, 1123 (10th Cir. 2007)).

As discussed above, the defendants knew when they approached the two men smoking on the porch that one of those men matched the description of a man who had taken a shotgun out of a car and walked into a house. But as the district court noted, "it's not unlawful to possess a shotgun" in Utah. *Id.* at 1099. Under these circumstances, we conclude that no reasonable officer could have believed that "reasonable and articulable suspicion" existed to support seizing Stoedter. *Vondrak*, 535 F.3d at 1203; *see Poolaw v. Marcantel*, 565 F.3d 721 (10th Cir. 2009).

In *Poolaw*, one of the defendant officers ordered law enforcement to stop one of the plaintiffs, based in part on that plaintiff's statement to her mother that she had a firearm in her vehicle. On appeal, we agreed with the plaintiff that her possession of a firearm—even in light of (1) her "status" as the sister-in-law of a man suspected of murdering a sheriff's deputy; (2) her admission to her mother that "she was anxious about having a gun in her car"; and (3) the fact that police hadn't yet located

---

[7] This conclusion renders largely inapposite the cases the defendants cite on pages 32 through 33 of their opening brief. None of these cases stand for the proposition that clearly established law automatically allows officers to respond to *any* report of an individual with a firearm with "the use of firearms and handcuffs," as the defendants suggest.

13

the weapon involved in the deputy's murder—didn't give the defendant reasonable suspicion to believe that the plaintiff was committing or had committed a crime. *Id.* at 725, 727, 736. And in reaching that conclusion, we explicitly relied on that fact that it's "lawful to carry a gun in a vehicle in New Mexico." *Id.* at 736.

Under *Poolaw*, it was clearly established at the time of Stoedter's seizure that his mere possession of a firearm in a state in which such possession is legal was insufficient to give the defendants reasonable suspicion. Were it otherwise, we would have reached a different result in *Poolaw*. There, we held not only that the defendant lacked reasonable suspicion to seize the plaintiff based on her possession of a firearm, but that he violated her clearly established rights in doing so. *Id.* at 737–38. And we reached that conclusion even though, as the dissent in *Poolaw* pointed out, (1) police suspected the plaintiff's brother-in-law of using a firearm to murder a sheriff's deputy; (2) that firearm was still at large at the time of the plaintiff's stop; and (3) under New Mexico law, it's illegal "to conceal the fruits of a crime." *Id.* at 751–52 (O'Brien, J., dissenting). If the defendant in *Poolaw* lacked even arguable reasonable suspicion under those circumstances, so too did the defendants in this case.

Moreover, we're not the first circuit to indicate that the mere possession of a firearm—without any indication that such possession is illegal—is insufficient to justify an investigatory detention. *See United States v. Lewis*, 672 F.3d 232, 240 (3d Cir. 2012) ("Absent any information about the criminality of the firearms, the mere possession of the firearms could not provide . . . reasonable suspicion" for traffic

14

stop.); *United States v. DeBerry*, 76 F.3d 884, 887 (7th Cir. 1996) (suggesting, in dicta, that officers must have reasonable belief that, in "carrying a gun," individual is "violating the law" before his or her possession of that gun can provide basis for investigatory detention).

Finally, *United States v. Conner*, 699 F.3d 1225 (10th Cir. 2012), is not to the contrary. In *Conner*, we held that there was reasonable suspicion based on the following facts: (1) a reliable caller reported that he heard someone yell, "No, no," and saw a man place a gun into his waistband; (2) the incident occurred at night in a high crime area; and (3) the defendant walked away upon seeing the officers before the officers seized him. *Id.* at 1230–32. These circumstances led us to conclude that the officers had reasonable suspicion that the individual was not only armed, but that he was involved in an armed confrontation. *Id.* at 1232. No such facts support arguable reasonable suspicion of any crime here.

Accordingly, we conclude that Stoedter has satisfied the clearly-established prong of the qualified immunity test. And when coupled with the district court's ruling that the defendants violated Stoedter's Fourth Amendment rights as a matter of law—which we affirm for the reasons discussed above—we likewise affirm the district court's rejection of the defendants' qualified immunity defense.

### III.    Stoedter is entitled to nominal damages.

Finally, even assuming that the district court didn't err in entering judgment as a matter of law as to whether they unconstitutionally seized Stoedter or in rejecting their qualified-immunity defense, the defendants argue that the district court

15

nevertheless erred in granting Stoedter's post-judgment motion and amending the judgment to award Stoedter nominal damages.[8]

Specifically, the defendants contend that (1) Stoedter waived the issue of nominal damages; (2) the district court erred in concluding that its failure to give a nominal-damages instruction amounted to plain-error; and (3) the district court lacked authority under Rule 50(b) to grant Stoedter's post-judgment motion. Because we conclude that (1) nominal damages are mandatory upon a finding of a constitutional violation under § 1983; (2) Stoedter didn't waive his entitlement to nominal damages; and (3) the district court's failure to give a nominal damages instruction was indeed plain error, we affirm.

A.  **Nominal damages are mandatory upon a finding of a constitutional violation.**

The district court determined that nominal damages are mandatory upon a finding of a constitutional violation under § 1983. *See Carey v. Piphus*, 435 U.S. 247, 266–67 (1978) (holding that parties suffering no actual injuries for due process constitutional violations are entitled to nominal damages); *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) ("[T]he rule seems to be that an award of nominal damages is mandatory upon a finding of a constitutional violation . . . .").

The defendants argue that *Searles'* comment about mandatory nominal damages is dicta. We disagree. In *Searles*, the plaintiff brought a First Amendment

_____

[8] Presumably Stoedter sought nominal damages because a plaintiff who wins nominal damages is a prevailing party under the civil rights attorney's fee provision, 42 U.S.C. § 1988(b). *Farrar v. Hobby*, 506 U.S. 103, 112 (1992).

claim against a chaplain at the correctional facility where the plaintiff was housed. 251 F.3d at 872. At trial, the district court improperly instructed the jury that it could award the plaintiff compensatory damages even if the plaintiff suffered no physical harm.[9] *Id.* at 874. The jury ultimately awarded the plaintiff compensatory damages and the defendant appealed, pointing out that "the jurors found no physical injury." *Id.* at 874.

We agreed with the defendant that the district court erred in "refus[ing] to give the instruction requiring proof of physical injury[] before any damages for mental or emotional injury could be awarded." *Id.* at 877. Accordingly, we ordered the district court to vacate the jury's compensatory damages award. *Id.* at 878. But because there was "no error in the liability portion of the [jury's] verdict," we also instructed the district court to amend the judgment to award the plaintiff nominal damages. *Id.*; *see also id.* at 881 ("Because the jury has found a constitutional violation, on remand the plaintiff is entitled to an award of nominal damages of one dollar."). And in doing so, we relied on our conclusion that "an award of nominal damages is mandatory upon a finding of a constitutional violation." *Id.* at 879. Accordingly, that statement was "necessarily involved" in our resolution "of the case in hand." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995) (defining dicta as "statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand." (quoting

---

[9] As a prisoner, the plaintiff's claims were subject to the restrictions of 42 U.S.C. § 1997e(e), which bars recovery of compensatory damages for mental or emotional injury. *See Searles*, 251 F.3d at 874–77.

17

Black's Law Dictionary 454 (6th ed. 1990))). Thus, we agree with the district court that, under *Searles*, nominal damages are mandatory upon a finding of a constitutional violation.

**B.     Stoedter didn't waive the issue of nominal damages.**

Even assuming that nominal damages are mandatory, the defendants argue that Stoedter waived his right to nominal damages. In support, the defendants cite *Salazaar v. Encinias*, 242 F.3d 390, 2000 WL 1843240 (10th Cir. 2000) (unpublished table decision).

In *Salazaar*, the jury found that the defendant officer violated the plaintiff's rights under the Fourth Amendment by "us[ing] excessive force in arresting him." *Id.* at *1. But because "[t]he jury further found that plaintiff did not prove that he was damaged, . . . it awarded no damages." *Id.* The plaintiff then moved to amend the judgment to award nominal damages, pointing out that "the jury found liability under § 1983." *Id.* The district court granted the motion and "amended the judgment to reflect an award of one dollar in nominal damages." *Id.*

In his cross-appeal, the defendant argued that the district court erred in amending the judgment to award nominal damages, pointing out that it was the plaintiff's own fault the district court didn't initially instruct the jury on the issue of nominal damages: after all, the defendant had proposed a nominal-damages instruction, and the plaintiff had twice objected to it. *Id.* at 2. Citing the invited-error doctrine, we agreed that the plaintiff had "waived any right he had to a nominal damage award" by objecting to the proposed instruction. *Id.* Thus, we concluded,

18

"there was no need for the district court to amend the judgment" to award nominal damages. *Id.*

Like the defendant in *Salazaar*, the defendants in this case requested a nominal damages instruction. But unlike the plaintiff in *Salazaar*, Stoedter never objected to their proposed instruction. In other words, he didn't affirmatively "induce[]" the district court's failure to give it. *Id.* (quoting *United States v. Burson*, 952 F.2d 1196, 1203 (10th Cir. 1991)). Accordingly, we reject the defendants' argument that, under *Salazaar*'s application of the invited-error doctrine, Stoedter waived any right he had to nominal damages.

The defendants also cite several out-of-circuit cases for the proposition that a plaintiff waives the issue of nominal damages by merely failing to (1) request a nominal-damages instruction or (2) object to a flawed one. We disagree with the defendants' characterization of these cases.

For instance, the Third Circuit used the term "waive[r]" in *Alexander v. Riga*, 208 F.3d 419, 429 (3d Cir. 2000). But it treated the instructional issue as forfeited, not waived; it reviewed for plain error. *Id.*; *see United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006) ("[A] party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error; but a party that has *waived* a right is not entitled to appellate relief."). And the Eighth Circuit did the same in *Miller v. Albright*, 657 F.3d 733, 736 (8th Cir. 2011).

Moreover, in *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990), the plaintiff not only failed to request a nominal-damages instruction; she "concurred with the court's

19

answer [to a jury question] that a minimum amount of damages need not be awarded." *Id.* at 535. Similarly, the plaintiff in *Oliver v. Falla*, 258 F.3d 1277 (11th Cir. 2001), not only failed to request a nominal-damages instruction, but "vehemently opposed" the idea of giving one. *Id.* at 1282.

Consequently, none of these cases establish that Stoedter waived—rather than forfeited—the issue of nominal damages merely by failing to request a nominal-damages instruction or by failing to object to the district court's decision not to give one.

## C. The district court plainly erred in failing to instruct the jury on nominal damages.

In determining whether it should grant Stoedter's post-judgment motion, the district court sua sponte determined that it committed plain error in failing to give a nominal-damages instruction. *See* Fed. R. Civ. P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights."). And because it concluded that a new trial wasn't necessary to correct that error, the district court opted instead to amend the judgment to award nominal damages to Stoedter.

The defendants challenge the district court's finding of plain error on appeal. Specifically, they assert that the four-part plain error test that we apply in criminal cases,[10] *see, e.g.*, *United States v. Harris*, 695 F.3d 1125, 1130 (10th Cir. 2012),

---

[10] Under that four-part test, we ask (1) whether there was error; (2) whether the error was plain; (3) whether the error affected substantial rights; and (4) whether the

20

doesn't apply in civil cases, and that the district court therefore erred in applying that four-part test here.

We disagree. True, we've indicated that it may be more difficult to satisfy our four-part plain-error test in civil, as opposed to criminal, cases. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) ("In civil cases this often proves to be an 'extraordinary, nearly insurmountable burden.'" (quoting *Emp'rs Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 770 (10th Cir. 2004))). But that four-part test applies all the same. *See id.* at 1128; *see also Eller v. Trans Union, LLC*, 739 F.3d 467, 479–81 (10th Cir. 2013) (applying four-part plain-error test where plaintiff challenged instruction on appeal that he failed to object to below). Accordingly, the district court didn't err in applying that test here.

In the alternative, even assuming that the district court applied the appropriate test, the defendants nevertheless maintain that the district court's failure to provide a nominal-damages instruction wasn't plain error. But the defendants don't explain which part of the four-part test they think isn't satisfied here. Instead, they cite generally to two unpublished (and therefore nonbinding) Tenth Circuit cases and the opinions of six of our sister circuits, and insist—without elaboration—that these authorities demonstrate that any error wasn't plain. We're not convinced.

First, the defendants again cite *Salazaar v. Encinias*, 242 F.3d 390, 2000 WL 1843240 (10th Cir. 2000) (unpublished table decision). But as we discussed above,

---

error "seriously affected the fairness, integrity, or public reputation of a judicial proceeding." *United States v. Makkar*, 810 F.3d 1139, 1144 (10th Cir. 2015).

*Salazaar* stands for the proposition that a plaintiff may waive his or her right to nominal damages under the invited error doctrine by objecting to a proposed nominal-damages instruction. *Id.* at \*2. It says nothing about whether a plaintiff who instead merely fails to object to such an instruction—and therefore forfeits, rather than waives, the issue—can subsequently establish plain error.[11]

Next, the defendants cite *Foote v. Utah*, 4 F. App'x 687 (10th Cir. 2001) (unpublished), which they complain the district court "ignored." Aplt. Br. 24. In *Foote*, the plaintiff challenged on appeal the district court's decision to *give* a nominal-damages instruction, not its failure to do so. 4 F. App'x at 690. Moreover, we found no error in the district court's decision to give that instruction. *Id.* We fail to see how *Foote* might support the defendants' position here.

Nor do we find *Miller v. Albright*, 657 F.3d 733 (8th Cir. 2011), *Alexander v. Riga*, 208 F.3d 419 (3rd Cir. 2000), *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990), *Oliver v. Falla*, 258 F.3d 1277 (11th Cir. 2001), or *Campos-Orrego v. Rivera*, 175 F.3d 89 (1st Cir. 1999), to be dispositive under the circumstances of this particular case.

As discussed above, the plaintiffs in both *Sims* and *Oliver* waived (rather than merely forfeited) the nominal-damages issue. *Sims*, 902 F.2d at 535, 536; *Oliver*, 258 F.3d at 1282. The plaintiff in *Sims* "concurred with the court's answer [to a jury

---

[11] If anything, *Salazaar* suggests that by requesting a nominal-damages instruction, the defendants waived any right to appeal the district court's subsequent ruling that it should have granted that request. *See* 2000 WL 1843240, at \*2 (explaining that under the invited-error doctrine, a "defendant may not invite a ruling and then seek to have it set aside on appeal").

question] that a minimum amount of damages need not be awarded." 902 F.2d at 535. And the plaintiff in *Oliver* "vehemently opposed" giving a nominal-damages instruction. 258 F.3d at 1282. Thus, neither court reviewed the failure to give a nominal-damages instruction for plain error. And therefore neither case is instructive here.

*Miller* is also unhelpful, albeit for a different reason. There, the Eighth Circuit rejected the plaintiff's argument that nominal damages were mandatory upon a finding of a Fourth Amendment violation, reasoning that the only cases the plaintiff provided to support that proposition instead involved procedural due process and First Amendment violations. 657 F.3d at 736. But unlike the Eighth Circuit, we have never limited application of our mandatory-nominal-damages rule to violations of certain constitutional rights. *Cf. Lancaster v. Rodriguez*, 701 F.2d 864, 866 (10th Cir. 1983) (declining to distinguish between procedural and substantive constitutional rights for purposes of awarding nominal damages where "plaintiff was unable to prove actual injury"). Moreover, in espousing our mandatory-damages rule, the *Searles* court cited approvingly to a Fourth Circuit case holding that nominal damages are mandatory upon a finding of a Fourth Amendment violation. *See* 251 F.3d at 879 (citing *Norwood v. Bain*, 143 F.3d 843, 855–56 (4th Cir. 1998), *aff'd in pertinent part en banc*, 166 F.3d 243 (4th Cir. 1999)). Accordingly, the defendants' reliance on *Miller* is misplaced.

So too is their reliance on *Campos-Orrego*. There, the jury returned a verdict for the plaintiff on her procedural due process claim and awarded her punitive

23

damages. 175 F.3d at 92–93. Upon the plaintiff's request, the district court then "deduct[ed] $1 from the punitive damage award and reallocate[ed] it as nominal damages." *Id.* at 93. On appeal, the defendant argued that this reallocation exceeded the district court's authority. *Id.* at 96. The First Circuit rejected this argument and affirmed the nominal-damages award. *Id. at* 99. True, the First Circuit indicated that it might have reached a different result if the plaintiff hadn't made a timely request for nominal damages. *See id.* at 98–99. But the court didn't explicitly address whether—let alone how—the plain-error test might apply if a plaintiff failed to do so. Accordingly, *Campos-Orrego* provides no support for the defendants' suggestion that the failure to give a nominal-damages instruction can never rise to the level of plain error.

Finally, we decline to rely on the Third Circuit's decision in *Alexander*. There, the court held that even if the district court erred in failing to instruct the jury that nominal damages were mandatory upon a finding of a constitutional violation, the "failure to rectify" that error "under the *specific circumstances* of th[at] case" wouldn't "result in a miscarriage of justice." That's because, even without nominal damages, the plaintiffs in *Alexander* were nevertheless the prevailing parties under 42 U.S.C. § 3613(c)(2), and were therefore entitled to attorney's fees and costs. *Alexander*, 208 F.3d at 429 (emphasis added). Here, on the other hand, Stoedter isn't the prevailing party under § 1988 (and therefore isn't entitled to attorney's fees) unless he obtains nominal damages. *See Farrar*, 506 U.S. at 112. Accordingly, we find *Alexander*'s rationale inapplicable here.

24

Instead, because the district court's failure to give a nominal-damages instruction "prevented [Stoedter] from vindicating" his Fourth Amendment rights "and barred any potential award of attorney's fees to [Stoedter] as a 'prevailing party' under [§ 1988(b)]," we agree with the district court that its "failure to instruct the jury adequately with respect to nominal damages was an error that was plain, that affected [Stoedter's] substantial rights, and that undermined the fairness of the judicial proceeding." *Risdal v. Halford*, 209 F.3d 1071, 1072–73 (8th Cir. 2000). Accordingly, the district court correctly determined that its failure to give a nominal-damages instruction constituted plain error.

**D.      Any error in granting Stoedter's post-judgment motion was harmless.**

Finally, even assuming that Stoedter didn't waive the issue of nominal damages and that the district court plainly erred in failing to give a nominal-damages instruction, the defendants argue that the district court nevertheless erred in amending the judgment to include nominal damages under the guise of Rule 50(b) because Stoedter didn't first move for judgment as a matter of law on that particular issue under Rule 50(a).

At the outset, we're not entirely convinced that the district court relied on Rule 50(b) as a vehicle for amending the judgment to include nominal damages. But assuming it did, we agree such reliance constitutes error. *See Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1266 (10th Cir. 2016) ("[A] party may only pursue a ground for relief in a postverdict Rule 50(b) motion if that same ground for relief was first asserted in a preverdict Rule 50(a) motion.").

25

Nevertheless, assuming such error occurred, it was harmless. Even if the district court had denied Stoedter's motion and refused to amend the judgment to award nominal damages, we would, for the reasons discussed above, be constrained to remand to the district court with directions to do precisely what it's already done: amend the judgment to award nominal damages. *See Searles*, 251 F.3d at 881 (remanding with directions to award nominal damages upon finding of constitutional violation). Because the ultimate outcome would remain the same, any error in the district court's decision to grant Stoedter's post-judgment motion didn't affect the defendants' substantial rights. Accordingly, we affirm the district court's order amending the judgment to award nominal damages. *See* § 2111 (requiring us to disregard errors that don't "affect the substantial rights of the parties").

## CONCLUSION

For the foregoing reasons, we affirm (1) the district court's order granting Stoedter judgment as a matter of law on the issue of whether the defendants unreasonably seized him, (2) the district court's rejection of the defendants' qualified immunity defense, and (3) the district court's order amending the judgment to award Stoedter nominal damages.

Entered for the Court


Nancy L. Moritz
Circuit Judge


26